[Cite as *State v. Chambers*, 2011-Ohio-4352.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                    :    Case No.   10CA902

    vs.                                     :

DAVID CHAMBERS,                          :    DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        John A. Bay, P.O. Box 29682, Columbus, Ohio 43229

COUNSEL FOR APPELLEE:         Aaron Haslam, Adams County Prosecuting Attorney, and
Mark R. Weaver, Adams County Assistant Prosecuting
Attorney,   Adams County Court House, 110 West Main
Street, West Union, Ohio   45693

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-25-11

ABELE, J.

{¶ 1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence.   David Chambers, defendant below and appellee herein, was convicted of two counts of felony murder in violation of R.C. 2903.02(B), with the predicate offenses being felonious assault and child endangering, respectively.   The trial court merged the two counts for sentencing purposes and sentenced appellant to serve fifteen years to life in prison.

{¶ 2} Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED DAVID CHAMBERS' RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR MURDER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT DEPRIVED MR. CHAMBERS OF A FAIR TRIAL AND COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE DOCTRINE OF ACCIDENT."

THIRD ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO REQUEST THE TRIAL COURT TO INSTRUCT THE JURY ON ACCIDENT."

{¶ 3} During the early morning hours of September 15, 2009, appellant was home with his eighteen-month old daughter. Around 7:30 a.m., appellant went to the nearby apartment of Marla Striblen to summon help for the child. He told Striblen, who had training as a medical emergency technician, that he believed the child was having a seizure and asked if she would check on the child. Striblen obliged and when she entered the apartment, she observed appellant's sister holding the child. Striblen noticed that the child was unresponsive, with shallow breathing. Striblen asked what happened, and appellant stated that the child had fallen down steps. Striblen directed appellant to phone 9-1-1 and performed mouth-to-mouth resuscitation until medical responders arrived.

{¶ 4} The child eventually was life-flighted to Cincinnati Children's Hospital. Sadly, the

child did not survive her injuries.   An autopsy reported that the child died from blunt force trauma to the head and the cause of death homicide.

{¶ 5} The Adams County Grand Jury returned an indictment that charged appellant with: (1) felony murder in violation of R.C. 2903.02(B), as a result of committing or attempting to commit felonious assault; and (2) felony murder in violation of R.C. 2903.02(B), as a result of committing or attempting to commit endangering children.   Appellant entered not guilty pleas.

{¶ 6} At trial, Vickie Barr, the child's great-aunt, happened to be one of the first medical responders.   Like Striblen, she explained that upon her arrival at the apartment, the child was unresponsive and had shallow breathing.   Barr observed facial bruising and swelling.   Barr stated that appellant told her that the child had fallen down the steps.   Barr additionally stated that when she was at the hospital with appellant, appellant told her that "he was the one that killed his daughter."   She also indicated that appellant felt that he may not have sought medical assistance in a timely manner.

{¶ 7} Village of Manchester Police Chief Randy Walters testified that he interviewed appellant shortly after the child was transported to the hospital.   Appellant informed Chief Walters that when he awoke that morning, between 5 and 6 a.m., he changed the child's diaper and the two went downstairs, where appellant played video games while the child had milk and fell asleep.   At some point, appellant had to use the bathroom, which was located upstairs.   He stated that while in the bathroom, he heard the child walking on the stairs and he then heard her falling down the stairs.   Appellant left the bathroom and found the child at the bottom of the stairs.   When he examined her, she cried for a second and then stiffened.   Appellant then put her on the living room couch and went to Striblen's apartment for help.

{¶ 8} Kenneth Dick, an investigator for the Adams County prosecutor's office, testified that he interviewed appellant the day after the child's alleged fall. Dick advised appellant that the doctors determined that appellant's story about the fall down the stairs did not explain the child's injuries. Appellant explained that when he observed the child at the bottom of the steps, he thought she was "faking," which made him mad, so he yelled at her to get up. He then stated that he moved her to the living room rug to attempt to wake her up, then ran her head under water, but his efforts didn't succeed. He stated that he then shook the child in an attempt to revive her and that while doing so, her head struck the carpeted floor. Appellant stated that approximately twenty minutes after the child fell, he summoned his sister for help.

{¶ 9} Investigator Dick interviewed appellant again on September 17, 2009. At that time appellant stated that after he observed the child at the bottom of the stairs, he yelled "get the fuck up" and that he was upset because she did not respond. He stated that he shook her in an attempt to make her respond. Appellant explained that he was not certain whether the child's head struck the tile floor at the bottom of the steps. Later in the interview, he stated that her head hit the tile floor three times and that he could hear it hitting the floor. He then stated that he moved her to the living room rug and shook her stomach and chest, then grabbed her by the head and shook it. He stated that he "shook it up and down." Appellant explained that the child then started to stiffen, at which point he sought his sister's help. Appellant continually stated that he was only trying to wake up the child and that although he knew he was "too rough," he had not meant to hurt her.

{¶ 10} Doctor Kathy Makaroff, a child abuse pediatric physician at Cincinnati Children's Hospital, testified that she examined the child on September 15, 2009 and reviewed the CAT scans. She stated that the first CAT scan showed brain swelling and bleeding on the top of the

child's brain and on one side that extended into the middle of her brain. Doctor Makaroff stated that bleeding on top of the brain is most commonly caused by a "pretty significant injury." She further testified that the child had retinal hemorrhages – "some of the worst bleeding in the back of her eyes that [Makaroff] had ever seen." Makaroff explained that the child had puddles of blood in each eye that extended into the vitreous or the jelly of her eye. The doctor stated that a "very significant amount of trauma," caused both the bleeding in the brain and the retinal hemorrhages. She emphasized that not just any trauma would cause the injuries but, rather, "a very significant, and I'm going to stress that, very significant amount of trauma to cause both the bleeding in her brain and the retinal hemorrhages." Makaroff stated that the child's injuries were not consistent with a fall down the stairs but, instead, were consistent with "a very violent hitting" onto a tile or carpeted floor.

{¶ 11} Karen Looman conducted the autopsy and found hemorrhaging surrounding the atlanto-occipital joint (the area between the base of the skull and the top of the spine), which would be caused by a whiplash-type injury or movement of the head back and forth. She also observed hemorrhaging and bleeding in the child's eyes. Looman stated that the injuries indicated "significant trauma to the head" resulting from a whipping or extreme shaking action. Looman testified that the child's injuries were not consistent with a fall, but, rather, an extreme trauma caused her injuries. Looman identified the cause of death as "traumatic brain injury due to blunt trauma to the head." Looman stated that the child's injuries were "extreme" and "lethal," and further explained that even if the injuries had occurred in the emergency room of a hospital, the child still would not have survived. She concluded that the child's manner of death resulted from homicide.

{¶ 12} After the prosecution rested, appellant presented the testimony of an expert witness who opined that the child's injuries could have resulted from a fall down the stairs. Appellant also testified and denied that he possessed any intent to hurt or kill the child. He stated that he was "bothered" that the child would not respond to him and that he "panicked" when he saw her at the bottom of the steps. Appellant testified that his "first instinct" was to shake her to see if she would wake up. He stated that he was not certain whether the child's head hit the tile floor and that if it did, "it was just a stupid mistake." On cross-examination, appellant stated that the child's injury resulted from an accident.

{¶ 13} After the court submitted the case to the jury, the jury posed several questions. The jury first requested a "copy of the elements from the prosecution." The court referred the jury to its instructions. The jury next asked whether it could "have a definition of violence as stated on verdict form two." The court responded, "child endangering * * * is statutorily defined as an offense of violence." The jury then advised the court that it was "blocked by a question regarding the actual definition of the term violence, rather than child endangerment." The jury explained that it was debating the term violence, "in regards to its inclusion of intent within its definition." The court requested the jury to clarify its question and the jury responded: "* * * we are requesting a definition of the term 'violence.' * * * Further, we need to know if the term 'violence,' includes intent in any way." The court responded: "* * * the term violence is not statutorily defined in Ohio Revised Code. In the absence of a statutory definition, you should employ the common ordinary meaning of words appearing in a statute. Webster's dictionary defines violence as, 'an exertion of physical force so as to injure or abuse.'" The court further instructed the jury that the term violence does not include intent.

{¶ 14} The jury next requested to review the transcripts of the three doctors' testimony. The court advised the jury that it must rely upon its collective memory.

{¶ 15} The jury then posed a multi-part question that requested: (1) the definition of felonious assault; (2) whether "attempting" includes intent; (3) whether the term "knowingly" includes intent; and (4) whether "aware" as used in knowingly includes intent. As to first three questions, the court referred the jury to the court's instructions. As to the last question, the court answered "no."

{¶ 16} The jury subsequently sent another note to the court that stated: "We feel we have reached a standstill, in that the determination remains divided. Regarding verdict one, the voting remains at ten to two. Regarding verdict two, the voting remains at eleven to one. The obstacle * * * seems to be based on wording of the verdict forms, that is, the concern of which forms designate intent. Please advise us regarding direction or further instruction."

{¶ 17} The court brought the jury into the courtroom and asked: "[I]s the question or issue whether purposeful intent is an essential element that must be proven beyond a reasonable doubt in either or both counts of the indictment." The foreperson responded that she believed that to be the issue. The court then instructed: "Felony murder does not require purposeful intent pursuant to Revised Code Section 2903.02(B)." The foreperson then asked, "Intent is not an issue?" The court responded: "Felony murder does not require purposeful intent * * *."

{¶ 18} The jury then continued deliberating and subsequently posed the following question: "We question if the term knowingly or aware implies that the defendant was in control of his thoughts and actions, or if they mean that, prior to the incident he understood that the actions or

conduct (in this case shaking) could produce, in this case, severe injury." The court directed the jury to the jury instructions' definition of knowingly.

{¶ 19} The jury additionally asked if "finding [appellant] guilty/not guilty of verdict form 1 and 1A designate that we believe the action committed was an accident; that is – will we claim by signing that he did this on purpose." The court responded: "[D]epending on your verdict or verdicts, on verdict forms 1 and 1A, you are only determining whether the State of Ohio did or did not prove beyond a reasonable doubt each and every essential element of the offense designated on verdict forms 1 and 1A. No more, no less."

{¶ 20} On May 20, 2010, the jury found appellant guilty of both counts. The court merged the two counts for sentencing purposes and sentenced appellant to serve fifteen years to life in prison. This appeal followed.

I

{¶ 21} In his first assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. He contends that the evidence shows that he attempted to "revive and resuscitate" the child and that his "lack of training and failure to maintain his composure" led to the child's death. He argues that the jury lost its way when it found that he acted either knowingly (to support the felony murder felonious assault count) or recklessly (to support the felony murder chid endangering count). Appellant contends that he did not knowingly cause serious physical harm to the child: "When he picked up his unconscious daughter, he was not aware that shaking her would cause the injuries described by the medical witnesses. He was attempting to revive or resuscitate his injured daughter." Appellant further argues that he did not act recklessly, but, instead, "acted deliberately in an effort to aid his daughter following her injury."

In support of his argument, appellant points to the jury's questions to the court, which he asserts demonstrate that the jury "was struggling with the question of why [appellant] shook his daughter after she had fallen down the steps and appeared to be unconscious."

{¶ 22} Generally, weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's Law Dictionary, Fifth Edition, 1429-43. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. As we explained in State v. Murphy, Ross. App. No. 07CA2953, 2008-Ohio-1744, at ¶31: "It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not

second guess a decision that has some basis in these two factors, even if we might see matters

differently."

{¶ 23} In determining whether his convictions are against the manifest weight of the

evidence, appellant requests that we apply the following eight factors set forth in State v. Mattison

(1985), 23 Ohio App.3d 10, 490 N.E.2d 926: "1. The reviewing court is not required to accept as

true the incredible; 2. whether the evidence is uncontradicted; 3. whether a witness was impeached;

4. what was not proved; 5. the certainty of the evidence; 6. the reliability of the evidence; 7.

whether a witness' testimony is self-serving; 8. whether the evidence is vague, uncertain,

conflicting or fragmentary."   See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, 514

N.E.2d 394 (reciting Mattison factors in manifest-weight-of-the-evidence analysis).   We have

previously declined to adopt the Mattison factors as "hard and fast rules." State v. Reeves (June 4,

1991), Highland App. No. 757.   Rather, we have determined that the Mattison factors are mere

"guidelines" that we may consider.   See id.; see, generally, State v. Dixon, Scioto App. No.

06CA3114, 2008-Ohio-3184 (reviewing Mattison as guidelines).

{¶ 24} In the case at bar, even if we apply the Mattison guidelines, after our review of the

record we do not find anything to suggest that the jury committed a manifest miscarriage of justice

such that we must reverse appellant's felony murder convictions.   We believe that the record

contains substantial competent and credible evidence to support appellant's felony murder

convictions.

{¶ 25} R.C. 2903.02(B) defines felony murder as follows:

{¶ 26} (B) No person shall cause the death of another as a proximate result of the

offender's committing or attempting to commit an offense of violence that is a felony of the

first or second degree and that is not a violation of section 2903.03 or 2903.04 of the

Revised Code.

{¶ 27} An "offense of violence" includes felonious assault, in violation of R.C.

2903.11(A)(1) and child endangering, in violation of R.C. 2919.22(B)(1) and (2).   See R.C.

2901.01(A)(9)(a).   A violation of R.C. 2903.11(A)(1) is a second-degree felony, see R.C.

2903.11(D)(1)(a), and a violation of either R.C. 2919.22(B)(1) or (2) is a second-degree felony if

the child suffers serious physical harm.   See R.C. 2919.22(E)(2)(d) and (E)(3).

{¶ 28} Notably, the felony murder statute does not require that the defendant intend to

murder the victim.   See State v. Fry, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶43.

 Instead, the requisite mental state is determined by looking to the predicate felony offense.   See

id.

{¶ 29} In the case at bar, the predicate offenses are felonious assault and child endangering.

 R.C. 2903.11(A)(1) sets forth the offense of felonious assault and states: "No person shall

knowingly do either of the following:   (1) Cause serious physical harm to another or to another's

unborn[.]"   R.C. 2919.22(B) defines the offense of child endangering and states:

> (B) No person shall do any of the following to a child under eighteen years
> of age or a mentally or physically handicapped child under twenty-one years of age:
> (1) Abuse the child;
> (2) Torture or cruelly abuse the child;

{¶ 30} In the case sub judice, appellant disputes whether the jury lost its way in finding that

he acted "knowingly" or "recklessly."[1]   He argues that he did not knowingly or recklessly cause

---

[1]   Although a mental state is not specified in the child endangering statute, the Ohio Supreme Court has stated that the appropriate mental state under R.C. 2919.22(B) is recklessness.   See State v. Adams (1980), 62 Ohio St.2d 151, 153, 404 N.E.2d 144.

serious physical harm to the child, but rather, simply attempted to revive the child.

{¶ 31} R.C. 2901.22(B) defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware

that his conduct will probably cause a certain result or will probably be of a certain

nature. A person has knowledge of circumstances when he is aware that such

circumstances probably exist.

{¶ 32} Recklessness is defined as follows:

"A person acts recklessly when, with heedless indifference to the
consequences, he perversely disregards a known risk that his conduct is likely to
cause a certain result or is likely to be of a certain nature. A person is reckless with
respect to circumstances when, with heedless indifference to the consequences, he
perversely disregards a known risk that such circumstances are likely to exist."

{¶ 33} R.C. 2901.22(C).

{¶ 34} We further observe that proof of knowledge is also proof of recklessness. See State

v. Journey, Scioto App. No. 09CA3270, 2010-Ohio-2555, ¶25. Thus, in the case at bar, if

substantial competent and credible evidence shows that appellant acted knowingly, then such

evidence also suffices to show that appellant acted recklessly. We therefore begin by analyzing

whether the evidence shows that appellant acted knowingly.

{¶ 35} To act "knowingly" is not to act "purposely," or with a specific intent to do the

prohibited act.[2] See State v. Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (stating that

---

[2] In Katz & Gianelli, Ohio Criminal Law (2010 Ed.), Section 85.7, the authors further define the distinction between "knowingly" and "purposely" as follows:

"'[k]nowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of 'purposely'"); see, also, State v. Dixon, Cuyahoga App. No. 82951, at ¶16, 2004-Ohio-2406. "Motive, purpose or mistake of fact is no significance" when determining whether a defendant acted knowingly. State v. Wenger (1979), 58 Ohio St.2d 336, 339, fn. 3, 390 N.E.2d 801.

{¶ 36} Because knowing precisely what existed in a defendant's mind at the time of the wrongful act may be impossible, the trier of fact may consider circumstantial evidence, i.e., the facts and circumstances surrounding the defendant's wrongful act, when determining if the defendant was subjectively "aware that his conduct will probably cause a certain result or will probably be of a certain nature." See Huff, 145 Ohio App.3d 563, 763 N.E.2d 695 ("Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself."); see, also, State v. Morrison, Summit App. No. 24965, 2010-Ohio-6309, ¶33; State v. Terry, 186 Ohio App.3d 670, 2010-Ohio-1604, 929 N.E.2d 1111, ¶22; State v. Young, Scioto App. No. 07CA3195, 2008-Ohio-4752, ¶32; State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. Even when a defendant testifies as to his lack of knowledge, a trier of fact may disbelieve his testimony

"An offender acts purposely when he or she intends the proscribed result. An offender acts knowingly when, although he or she may be indifferent to the result, the actor was nevertheless conscious that the unlawful result would occur. For example, one 'purposely' kills another when he discharges a firearm in the direction of the intended victim seeking to bring about his death. However, one would 'knowingly' kill another if she simply discharged the same firearm in the direction of the victim, not seeking to effect death (she may well have committed the act for the purpose of testing the weapon) but knowing full well that death would result. In other words, 'purpose' depends on an intended result, while 'knowledge' is consciousness that the proscribed result will occur."

and examine the surrounding facts and circumstances to determine whether the defendant possessed "knowledge." Cf. State v. Browning, Highland App. No. 09CA36, 2010-Ohio-5417, ¶41 (stating that trier of fact may believe "all, some, or none" of a witness's testimony). Thus, a defendant's testimony regarding his lack of knowledge is not determinative.

{¶ 37} In the case sub judice, we believe that the record contains substantial competent and credible evidence that appellant knowingly caused serious physical harm to the child. Appellant admitted to shaking the child and hitting her head at least three times on a tile floor. He admitted that he heard the child's head hitting the tile floor. The prosecution's expert medical witness stated that the child's injuries resulted from a "very significant trauma." The coroner stated that the child's injuries resulted from an extreme shaking motion. It is inconceivable that any person would not have realized that hitting a child's head on a tile floor would lead to serious physical harm. Even if appellant argues that he did not possess the specific intent to cause serious physical harm and intended only to "revive" the child, the facts nonetheless show, by any reasonable interpretation, that even the densest of individuals would be aware that slamming a child's head into a tile floor at least three times, continuing to shake the child's head, and then hitting the child's head on carpeted floor would probably result in serious physical harm. See State v. Freeman, Stark App. No. 2010CA19, 2010-Ohio-5818, ¶16 (concluding that a defendant who violently strikes another individual already knocked to the ground "must be held to know that this action will probably cause serious physical harm to such person"). It simply defies belief to suggest that an individual would not be aware that hitting an eighteen-month old child's head into a tile floor at least three times, and yet again on a carpeted floor, and then shaking the child in an extreme manner, according to the state's witnesses, would cause the child serious physical harm.

We recognize that appellant's remorse may indeed be genuine, but his actions nonetheless caused serious physical harm. His claims that he did not know that slamming the child's head into the floor and shaking the child "too rough" would probably result in serious physical harm are not worthy of belief.

{¶ 38} We also recognize that the jury appeared to be concerned with appellant's intent. As we previously stated, however, a defendant need not possess a specific or purposeful intent to cause serious physical harm to a person in order to support a felony murder felonious assault conviction. Rather, the appropriate mental state is "knowingly," which does not require a specific intent to cause serious physical harm. Thus, although appellant attempts to demonstrate that the jury's questions regarding intent shows that it lost its way, the jury's questions actually demonstrate an initial misunderstanding of the elements. The jury apparently initially believed that appellant must possess the intent to harm or kill the child. Once the court corrected this misunderstanding, the jury returned guilty verdicts. Appellant may well have lacked an intent to kill his child, but the prosecution is not required to prove that he possessed the intent to kill. Rather, the prosecution is required to prove that appellant knowingly caused the child serious physical harm that proximately resulted in the child's death. Here, the prosecution presented substantial competent and credible evidence to demonstrate that appellant knowingly caused the child serious physical harm that proximately resulted in the child's death. Thus, appellant's conviction for felony murder as a result of committing felonious assault is not against the manifest weight of the evidence.

{¶ 39} Moreover, because substantial competent and credible evidence establishes that appellant acted "knowingly," that same evidence also establishes that he acted "recklessly." Thus,

appellant's conviction for felony murder as a result of committing child endangering is not against the manifest weight of the evidence.

{¶ 40} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

II

{¶ 41} In his second assignment of error, appellant asserts that the trial court committed plain error by failing to give the jury an accident instruction.

{¶ 42} Initially, we note that appellant did not request the trial court to give an accident instruction and furthermore did not object to the court's failure to give an accident instruction. Under Crim.R. 30(A) "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."  When a party fails to properly object, then the party waives all but plain error.  See State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶51; State v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus.  Plain error exists when the error is plain or obvious and when the error "affect[s] 'substantial rights.'" The error affects substantial rights when "'but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.'"  State v. Litreal, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, at ¶11, quoting State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.  Courts ordinarily should take notice of plain error "with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."  State v. Gardner, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶78; State v. Patterson, Washington App. No. 05CA16, 2006-Ohio-1902, ¶13.  A reviewing court should consider noticing plain error only if the

error ""'"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'"" Barnes, 94 Ohio St.3d at 27, quoting United States v. Olano (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.   In the case at bar, we do not find plain error.

{¶ 43} Generally, a trial court has broad discretion to decide how to fashion jury instructions.   The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."   State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is "'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'" State v. Lessin (1993), 67 Ohio St.3d 487, 493, 620 N.E.2d 72, quoting State v. Nelson (1973), 36 Ohio St.2d 79, 303 N.E.2d 865, paragraph one of the syllabus.

{¶ 44} When a defendant raises an accident defense, "'the defendant denies any intent * * *.   He denies that he committed an unlawful act and says that the result is accidental.'"   State v. Poole (1973), 33 Ohio St.2d 18, 20, 294 N.E.2d 888, quoting 4 Ohio Jury Instructions (1970) 177, Section 411.01.   The defense of accident is "tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. * * * Accident is an argument that supports a conclusion that the state has failed to prove the intent element of the crime beyond a reasonable doubt."   State v. Atterberry (1997), 119 Ohio App.3d 443, 447.

{¶ 45} An accident is defined as an unfortunate event occurring casually or by chance. State v. Brady (1988), 48 Ohio App.3d 41, 42, 548 N.E.2d 278.   Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated)

(foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id.

{¶ 46} In general, a trial court errs by failing to provide a jury instruction on the accident defense when the facts of a case warrant such an instruction. See State v. Smiley, Cuyahoga App. No. 03853, 2010-Ohio-4349, ¶16. "'[I]f[, however,] the trial court's general charge was otherwise correct, it is doubtful that this error of omission would ever satisfy the tests for plain error or ineffective assistance of counsel.'" Id., quoting State v. Stubblefield (Feb. 13, 1991), Hamilton App. No. C-890597, citing State v. Sims (1982), 3 Ohio App.3d 331, 335, 445 N.E.2d 245. "This is so '[b]ecause the accident defense is not an excuse or justification for the admitted act,' and the effect of such an instruction 'would simply * * * remind the jury that the defendant presented evidence to negate the requisite mental element,' such as purpose. In this regard, '[i]f the jury had credited [the defendant's] argument, it would have been required to find [the defendant] not guilty * * * pursuant to the court's general instructions.'" Id., quoting State v. Johnson, Franklin App. No. 06AP-878, 2007-Ohio-2792, ¶63 (internal citations omitted).

{¶ 47} In Smiley, for example, the court held that in a prosecution for felonious assault, trial counsel's failure to request an accident instruction did not prejudice the defendant when the trial court properly instructed the jury regarding the requisite mental state of knowingly. The court reasoned that the court's knowingly instruction clearly informed the jurors that "knowing conduct * * * goes beyond that considered to be an accident" and that "an accident instruction would not have added anything to the general instructions." Id. at ¶19. The court stated that if the jury had believed the defendant's accident claim, then it would have returned a not guilty verdict in

accordance with the general instructions that the trial court did provide.   Id.; see, also, <u>State v. Juntunen</u>, Franklin App. Nos. 09AP-1108 and 09AP-1109, ¶16, 2010-Ohio-5625 (concluding that jury's finding that defendant acted knowingly when he caused physical harm to the victim negated any potential for finding that defendant acted unintentionally or unknowingly in causing such harm so as to warrant an accident instruction); <u>Johnson</u>, supra, ¶64, (finding no plain error when the defendant was charged with murder, and the trial court instructed the jury that the state bore the burden of proof beyond a reasonable doubt on every element of the offense, including the "purposely" mental element, and then defined "purposely"); <u>State v. Martin</u>, Franklin App. No. 07AP-362, 2007-Ohio-7152, ¶53, (stating that "accident defense instruction would not have added anything to the general instruction in regards to appellant's reckless homicide charge" when court otherwise properly instructed jury regarding burden of proof and elements of offense, including mental element of reckless).

{¶ 48} In the case sub judice, the trial court properly instructed the jury regarding the applicable mental state, knowingly.   By definition, the term "knowingly" means that the defendant's conduct was not an accident.   By finding that appellant acted knowingly, the jury necessarily concluded that he was aware of his conduct and thus, that his conduct could not have simply been accidental.   Thus, the court's knowingly instruction adequately conveyed to the jury the requisite mental state, and had the jury believed appellant's claimed accident theory at trial, it could not have found that he acted knowingly.   We therefore see no danger that the jury wrongly convicted appellant due to the absence of an accident instruction.

{¶ 49} Moreover, we do not believe that the facts adduced at trial support an accident instruction.   Appellant admits that he shook the child and hit her head into the tile floor and the

carpet. Thus, his admission reveals that his conduct was not simply an unfortunate event, but rather that he made a conscious decision to shake the child. Additionally, the child's resulting serious physical harm was not an unforeseen consequence of appellant's shaking and smacking of the child's head. Although the child's death may have arguably occurred unintentionally, the serious physical harm and her death was not an unforeseeable consequence of appellant's actions. In appellant's mind, the child's death may have been an accident because he did not intend to kill her. According to law, however, appellant's conduct was not an accident. The evidence shows that he was aware that his conduct would probably result in serious physical harm to the child, which negates any claim of accident.

{¶ 50} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

III

{¶ 51} In his third assignment of error, appellant asserts that trial counsel was ineffective for failing to request an accident instruction.

{¶ 52} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. See McMann v. Richardson (1970), 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763; State v. Stout, Gallia App. No. 07CA5, 2008-Ohio-1366, ¶21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, State v. Issa, 93 Ohio St.3d 49, 67, 2001-Ohio-1290, 752 N.E.2d 904; State v. Goff, 82 Ohio St.3d 123, 139, 1998-Ohio-369, 694 N.E.2d 916. "In order to show

deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶95 (citations omitted).  "Failure to establish either element is fatal to the claim."  State v. Jones, Scioto App. No. 06CA3116, 2008-Ohio-968, ¶14.  Therefore, if one element is dispositive, a court need not analyze both.  See State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52 (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶ 53} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id.  "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner."  State v. Taylor, Washington App. No. 07CA11, 2008-Ohio-482, ¶10, citing State v. Smith (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.  See State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶62; State v. Hamblin (1988), 37 Ohio St.3d 153, 156, 524 N.E.2d 476.

{¶ 54} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different.  State v.

White, 82 Ohio St.3d 16, 23, 1998-Ohio-363, 693 N.E.2d 772; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.   Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated.   See State v. Clark, Pike App. No. 02CA684, 2003-Ohio-1707, ¶22; State v. Tucker (Apr. 2, 2002), Ross App. No. 01CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691.

{¶ 55} In the case at bar, appellant cannot demonstrate that he suffered any prejudice as a result of counsel's failure to request an accident instruction.   As we explained in our discussion of appellant's second assignment of error, because the jury found that appellant acted knowingly, it could not have found that appellant's actions constituted an accident.   Moreover, even if trial counsel had requested an accident instruction, the facts adduced at trial do not support such an instruction and the trial court would not have been obligated to give such an instruction.   Thus, any alleged deficiency in counsel's failure to request an accident instruction did not prejudice appellant.

{¶ 56} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.


JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, P.J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.