[Cite as *State v. Mohamed*, 2019-Ohio-3785.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                     :

      Plaintiff-Appellee,                   :                No. 17AP-920
                                                                        (C.P.C. No. 16CR-4257)
v.                                                      :
                                                                        (REGULAR CALENDAR)
Muhuba Mohamed,                             :

      Defendant-Appellant.               :

---

D E C I S I O N

Rendered on September 19, 2019

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief**: *Sanjay K. Bhatt*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Muhuba Mohamed, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a bench trial in which the trial court found appellant guilty of aggravated vehicular homicide, a felony of the third degree.

{¶ 2} On August 5, 2016, appellant was indicted on one count of aggravated vehicular homicide, in violation of R.C. 2903.06, a felony of the second degree. The indictment, which arose out of the death of a seven-month-old child, alleged the offense occurred on June 2, 2016. Appellant waived her right to a jury trial, and the trial court conducted a bench trial beginning October 2, 2017. Two court interpreters translated on behalf of appellant, a Somali native.

{¶ 3} Prior to trial, plaintiff-appellee, State of Ohio, provided notice of its intent to introduce other acts evidence with respect to a driving citation issued by a highway patrol officer to appellant four days prior to the events at issue in the instant case. Specifically, State Highway Patrol Trooper Tiffany Kohls testified that, on May 29, 2016 (part of the Memorial Day weekend), she responded to a one-vehicle accident on Interstate 71 in Delaware County. The vehicle, driven by appellant, had "crashed into the median cable barrier which rendered it undriveable." (Oct. 2, 2017 Tr. at 18.) The trooper determined appellant was driving alone at the time of the incident. Appellant provided the trooper with an operator's license that was "not just a standard operator's license." (Oct. 2, 2017 Tr. at 20.) Due to a busy workload during the Memorial Day weekend, the trooper "basically just assumed that it was a valid operator's license." (Oct. 2, 2017 Tr. at 20.) Had Trooper Kohls been aware at the time that appellant only possessed a temporary license, and "without a valid licensed driver in the vehicle," the trooper "would have cited her for driving without a valid operator's license." (Oct. 2, 2017 Tr. at 21.)

{¶ 4} Appellant "had a bunch of warrants out for her arrest." (Oct. 2, 2017 Tr. at 19.) However, because of the busy holiday weekend, the trooper only issued her a citation for failure to control and permitted her to leave the scene with "friends or family" who had arrived shortly after the incident. (Oct. 2, 2017 Tr. at 19.) Following the trooper's testimony, the trial court determined the evidence was admissible under Evid.R. 404(B).

{¶ 5} Steve New, age 35, resides on Westerville Road. At trial, New identified several pictures depicting a Toyota Rav4 that "ran into my house" on June 2, 2016. (Oct. 2, 2017 Tr. at 26.) On that date, New was outside watering flowers when he heard a sound near his mailbox. New observed "a young fellow * * * flying over the top of the car." (Oct. 2, 2017 Tr. at 27-28.) New was unaware at the time that a baby was also involved.

{¶ 6} The driver hit a mailbox, and then "she went right straight through the yard and ran into my house." (Oct. 2, 2017 Tr. at 29-30.) New was "standing there going, stop, stop, stop, stop." (Oct. 2, 2017 Tr. at 30.) New did not observe any effort on the part of the driver to apply brakes to the vehicle, nor did he observe anyone else inside the vehicle. New ran out to the front of his house and told his wife to dial 911.

{¶ 7} The driver, a female, exited the car and "ran back to where the accident scene was, screaming and hollering." (Oct. 2, 2017 Tr. at 28.) New first made contact

with the driver when she returned to her vehicle to retrieve something.  New asked the driver if she knew what happened and if she was okay, but the driver did not respond.  At one point after the incident, New observed the driver speaking on her phone.  New had also observed the phone in the driver's right hand "when she was coming through the yard."  (Oct. 2, 2017 Tr. at 36.)

{¶ 8}  A van subsequently approached the area; the "side door was open" and individuals inside the van were talking to the driver.  (Oct. 2, 2017 Tr. at 37.)  New "was telling her that she can't leave."  (Oct. 2, 2017 Tr. at 37.)  A police officer soon arrived, as well as an emergency vehicle.  New, who has a security camera installed at his residence, identified state's Exhibit B as video of the incident captured from his surveillance system.  The state played the recording during the bench trial.

{¶ 9}  On June 2, 2016, Kenneth Ray Stepp, age 46, was riding a motorcycle southbound on Westerville Road at approximately 3:30 p.m.  As he was approaching a corner, he observed "the guy coming off the top of the car."  (Oct. 2, 2017 Tr. at 54.)  Stepp pulled his motorcycle up to where the accident occurred, and he observed "a baby laying there on the ground."  (Oct. 2, 2017 Tr. at 54.)  At trial, Stepp identified a photograph depicting his motorcycle and a baby stroller at the scene.  When Stepp arrived at the scene, the baby was approximately five to seven feet from the stroller.

{¶ 10}  Stepp, as well as a female motorist who had stopped at the scene, performed CPR on the baby.  He noticed "immediate swelling * * * of the baby's head."  (Oct. 2, 2017 Tr. at 59.)  Stepp testified that he "literally saw the baby take its last breath."  (Oct. 2, 2017 Tr. at 59.)  Paramedics soon arrived at the scene.

{¶ 11}  Stepp observed only "the lady in the car.  There was nobody else in the car with her."  (Oct. 2, 2017 Tr. at 60.)  At trial, Stepp identified appellant as the driver of the vehicle.  Following the incident, the father of the baby "wanted to go after the lady, but I was holding him back from doing that."  (Oct. 2, 2017 Tr. at 61.)  Another female at the scene "went * * * after her.  But the police officer was able to grab her and tackle her down, to keep her from getting hold of her."  (Oct. 2, 2017 Tr. at 61.)  Stepp observed "many people there, trying to pray for the baby."  (Oct. 2, 2017 Tr. at 61.)

{¶ 12} Nafiso Jamale is employed as a unit coordinator at Nationwide Children's Hospital.  On June 2, 2016, Jamale was driving southbound on Westerville Road when

she observed a car had driven through a yard. Jamale also observed a man along the side of the road with a baby. Jamale exited her vehicle, and the man was "saying, My baby. My baby." (Oct. 2, 2017 Tr. at 65.) Jamale and another man at the scene performed CPR on the baby.

{¶ 13} Jamale, who speaks Somali, began talking to appellant at the scene. Jamale helped appellant write out a statement to police. Jamale wrote down what appellant was saying. Appellant stated that she was driving and she "didn't know where the man and the baby came from." (Oct. 2, 2017 Tr. at 70.) Further, "she doesn't know how she lost control." (Oct. 2, 2017 Tr. at 72.) Jamale asked appellant whether anyone was with her and she said no, but then said yes.

{¶ 14} Franklin County Sheriff's Deputy John Kirby is assigned to the department's accident and investigation unit. Deputy Kirby determined that appellant was the driver of the at-fault vehicle on June 2, 2016. Deputy Kirby stated there was no evidence anyone else was in the vehicle with appellant at the time of the accident. The deputy identified the adult male struck by appellant's vehicle as Kenan Ferebee. Appellant had a temporary driver's permit, requiring the permit holder to be accompanied by a licensed driver. Appellant underwent blood tests, and no alcohol or drugs were detected.

{¶ 15} Deputy Kirby obtained appellant's cell phone records as part of the investigation. The records indicated appellant was not making or actively receiving a phone call at the time of the accident. The records would not indicate activity with respect to multimedia messages, text messages sent as multimedia messages, or internet usage.

{¶ 16} Kenan Ferebee, age 24, is the father of M.F., age seven months. On the afternoon of June 2, 2016, Ferebee walked to a nearby drive-thru, located approximately ten minutes walking distance from his residence. Ferebee was pushing his son in a stroller. On his return from the store, Ferebee was walking northbound on the shoulder of Westerville Road. One of the stroller wheels became stuck, and he "stopped to fix it. The next thing I know I was in the air." (Oct. 3, 2017 Tr. at 107.) The car struck Ferebee in the back. As soon as he got up, he observed his baby "laying on the ground." (Oct. 3, 2017 Tr. at 107.) Ferebee "ran over there and took the stroller off of him." (Oct. 3, 2017 Tr. at 107.) Ferebee picked up his son and then motioned to passing motorists for help. A

sheriff later took Ferebee to a hospital; approximately 15 minutes after arrival, a doctor informed Ferebee that his son had died.

{¶ 17} At trial, the parties entered into certain stipulations. If called to testify, Adam Balle, the owner of Balle Auto Sales, would have testified that on June 2, 2016, he was working at Balle Auto Sales, located on 3444 Westerville Road. On that date, he agreed to sell a Toyota Rav4 "with the VIN number that matches to" appellant. (Oct. 3, 2017 Tr. at 112.) Shortly before 4:50 p.m., appellant left Balle Auto Sales "as the sole occupant and driver of the Toyota Rav4 with the appropriate VIN number." (Oct. 3, 2017 Tr. at 112.)

{¶ 18} It was further stipulated that, if called to testify, Dr. Kent Harshbarger, a forensic pathologist with the Franklin County Coroner's Office, would testify he performed an autopsy of M.F. on June 4, 2016. Dr. Harshbarger "would testify that [M.F.] suffered multiple blunt force injuries to the head and torso, including a fractured skull, a fractured clavicle, a fractured femur and multiple internal injuries." (Oct. 3, 2017 Tr. at 113.) Dr. Harshbarger would further state that "the cause of death * * * was blunt force injury of the head." (Oct. 3, 2017 Tr. at 113.)

{¶ 19} Following the presentation of evidence, the trial court found appellant guilty of the lesser-included offense of aggravated vehicular homicide, a felony of the third degree.[1] By judgment entry filed November 29, 2017, the trial court imposed a 36-month sentence, as well as a lifetime driver's license suspension.

{¶ 20} On appeal, appellant sets forth the following three assignments of error for this court's review:

> [I.] The evidence was legally insufficient to support Appellant's conviction for Aggravated Vehicular Homicide.
>
> [II.] The trial court prejudicially erred when it permitted the State to present, over objection, testimony and evidence concerning Appellant's driving and involvement in a one-vehicle accident on May 29, 2016.
>
> [III.] Appellant's conviction was against the manifest weight of the evidence.

---

[1] The trial court reduced the offense from a second-degree felony to a third-degree felony based on the court's determination that the state failed to prove appellant was operating the vehicle without a valid license.

{¶ 21} For purposes of review, we will consider appellant's first and second assignments of error in inverse order. Under the second assignment of error, appellant contends the trial court erred in permitting the state, over objection, to present evidence concerning her driving and involvement in a one-vehicle accident on May 29, 2016, four days prior to the events at issue in this case. Appellant, asserting that the record does not indicate the reason for the one-vehicle accident on Interstate 71, maintains the evidence was not admissible under Evid.R. 404(B) as it served only to offer a description of character and tendency to act in conformity therewith.

{¶ 22} In response, the state argues that evidence related to the single-car crash just four days earlier was relevant for the non-propensity purpose of showing appellant's level of knowledge and recklessness at the time of her driving on June 2, 2016. The state further argues appellant provided no evidence to suggest the crash may have occurred due to other reasons; rather, the state maintains, the evidence at trial excluded adverse weather conditions, and the crash report indicated the sole contributing circumstance to the crash was appellant's failure to control the vehicle in veering to the left and crashing into the median cable.

{¶ 23} Evid.R. 404(B) provides:

> **Other crimes, wrongs or acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 24} The Supreme Court of Ohio has set forth a "three-step analysis" for trial courts in considering whether to admit other acts evidence. *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19. Specifically, a trial court is to (1) "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" under Evid.R. 401, (2) "consider whether evidence of the other crimes, wrongs or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)," and (3) "consider whether the probative value of the

other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

{¶ 25} An appellate court's "review of a trial court's decision regarding the admissibility of other crimes, wrongs, or acts under Evid.R. 404(B) is conducted under an abuse-of-discretion standard." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 1.

{¶ 26} On review, we find the trial court did not abuse its discretion in admitting evidence of appellant's single-car crash four days prior to the events at issue in this case. Evid.R. 404(B) allows the admission of other acts evidence if offered for a permissible purpose, including knowledge. For purposes of R.C. 2903.06, the culpable mental state for the offense of aggravated vehicular homicide is recklessness. *State v. Shutes,* 8th Dist. No. 105694, 2018-Ohio-2188, ¶ 42. Under Ohio law, "proof of knowledge is also proof of recklessness." *State v. Chambers,* 4th Dist. No. 10CA902, 2011-Ohio-4352, ¶ 34. *See also State v. Villa-Garcia,* 10th Dist. No. 03AP-384, 2004-Ohio-1409, ¶ 28, citing R.C. 2901.22(E) ("When recklessness is an element of an offense, knowledge or purpose is also sufficient culpability to establish this element.").

{¶ 27} Here, we agree with the state that the evidence was presented for a proper purpose to prove appellant's knowledge that, without the presence of a licensed driver in the vehicle, she had been unable to control the vehicle she was driving, i.e., the fact appellant was involved in a one-vehicle accident only four days prior to the offense of June 2, 2016, in which she was cited for failure to control, went to her knowledge of the risk she posed to others in choosing to drive unaccompanied by a licensed driver. We also agree with the state that the evidence meets the low threshold of relevancy in showing that appellant was on notice of her inexperience and lack of control when unaccompanied by a licensed driver. Further, evidence of knowledge was probative as to the issue of recklessness, and the potential of unfair prejudice was reduced as this was a bench trial. *See, e.g., State v. Johnson,* 8th Dist. No. 87776, 2006-Ohio-6593, ¶ 14 (finding admission of Evid.R. 404(B) evidence proper and noting "[i]n a bench trial, it is presumed that the court considers only relevant, material, and competent evidence in reaching its decision").

{¶ 28} Finding no abuse of discretion by the trial court in admitting evidence as to the prior accident, appellant's second assignment of error is not well-taken and is overruled.

{¶ 29} Appellant's first and third assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges her conviction for aggravated vehicular homicide as not supported by sufficient evidence and as against the manifest weight of the evidence.

{¶ 30} With respect to her sufficiency argument, appellant contends there was no evidence she was reckless in her conduct on June 2, 2016. Appellant maintains she was driving on Westerville Road at 4:50 p.m. and lost control of her vehicle. In that brief moment, Ferebee and his son had stopped on a narrow shoulder of the road; the stroller's wheel was struck, and Ferebee stopped to fix it. Appellant argues she was not impaired at the time, and was not using her phone when she lost control of the vehicle. Appellant further argues the evidence did not indicate she was an inexperienced driver.

{¶ 31} In considering a challenge to the sufficiency of the evidence, "the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 32} By contrast, in addressing a manifest weight challenge, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Munoz*, 10th Dist. No. 11AP-475, 2011-Ohio-6672, ¶ 8. Under Ohio law, "[t]he power to reverse on manifest-weight grounds should only be used in exceptional circumstances when 'the evidence weighs heavily against the conviction.' " *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

{¶ 33} R.C. 2903.06 sets forth the offense of aggravated vehicular homicide, and R.C. 2903.06(A)(2)(a) states in part: "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [i]n one of the following ways: * * * [r]ecklessly." Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain

result or is likely to be of a certain nature." Further, "[a] person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*[2]

{¶ 34} As noted, appellant contends the evidence fails to support a finding of recklessness. At the close of the bench trial, the trial court made the following findings on the issue of recklessness. The trial court initially deemed it "notable" that appellant, several days prior to the incident at issue, "had just been cited for failure to control on the freeway in a one-car accident where she went off the side of the [roadway] striking the barrier." (Oct. 3, 2017 Tr. at 137.)

{¶ 35} As to the events of June 2, 2016, the court noted appellant was driving in a "residential neighborhood during the busy time of day where people were getting off of work, kids were getting out of school," and "there was heavy traffic." (Oct. 3, 2017 Tr. at 137.) The trial court found appellant "was an inexperienced driver with no one in the car with her," that she "veered to the right" and "hit a mailbox, continued through two or three yards, and then hit a house. But even before the mailbox that she hit, there was a bright orange fire hydrant, and for some reason that did not stop her." (Oct. 3, 2017 Tr. at 137-38.)

{¶ 36} In reviewing the surveillance video of the events, the trial court noted the fact that, after appellant "hit the victim and his father, she still did not hit the brakes. The only thing that stopped her was the house. She kept going at a speed, and she did not hit her brakes. She did not even turn the steering wheel." (Oct. 3, 2017 Tr. at 138.) Citing evidence that "[i]t was daytime," there was "ample lighting," the father was wearing "a white tank top and he was pushing a brightly-colored stroller," the court found "there was no reason to think that [appellant] did not see them." (Oct. 3, 2017 Tr. at 138.) Further, "[t]here was nothing obstructing her view," and "[s]he hit the victims hard enough to injure the father and kill the baby." (Oct. 3, 2017 Tr. at 138.) The court also found appellant "knowingly violated the restriction on her license a week after being in a car

---

[2] Pursuant to R.C. 2901.01(A)(7), "[r]isk" is defined to mean "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8) defines "[s]ubstantial risk" to mean "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

accident." (Oct. 3, 2017 Tr. at 138.) Based on the "totality of the circumstances," the trial court concluded appellant's conduct "does amount to reckless conduct," and the court therefore found her guilty of "aggravated vehicular homicide, a felony of the third degree." (Oct. 3, 2017 Tr. at 138.)

{¶ 37} On review, we find sufficient evidence supports the trial court's determination. Here, the evidence indicates appellant had a temporary driver's permit during the relevant time period, requiring her to be accompanied by a licensed driver. Four days prior to the events at issue, appellant was cited for failure to control after the car she was driving, unaccompanied by a licensed driver, "went off the left side of the roadway striking the median cable barrier." (May 29, 2016 Traffic Crash Report.)

{¶ 38} On June 2, 2016, appellant was again driving without the presence of a licensed driver, having just purchased a vehicle from a dealership on Westerville Road; appellant's vehicle traveled only a short distance from the car dealership before striking Ferebee and his infant son. The state's evidence included surveillance video of the events supporting the trial court's finding there was nothing to obstruct appellant's view of Ferebee walking on the shoulder of the road, i.e., it was daytime, Ferebee was wearing a white shirt and pushing a brightly-colored stroller. The evidence also supported a reasonable inference as to appellant's inexperience and/or lack of driving skill and inability to control her vehicle. Specifically, the surveillance video indicates that, even after the vehicle veered toward the shoulder of the road and hit Ferebee and his infant son, appellant made no attempt to apply brakes or to correct the course of the vehicle as it traveled through the yard; rather, the vehicle only came to a stop as a result of striking the house. Testimony by the homeowner indicated appellant was holding her cellphone in her right hand as she traveled through the yard, and appellant subsequently indicated she "didn't know where the man and baby came from," strongly suggesting that her focus was elsewhere at the time of the events.

{¶ 39} At trial, the state argued the incident four days earlier, in which appellant, driving alone, veered off the road and crashed into a median cable, "would place her on a heightened sense of awareness that perhaps she is not a good driver and needs someone else with her," and that such factor "goes to her knowledge about disregarding a substantial and unjustifiable risk." (Oct. 3, 2017 Tr. at 120-21.) We agree. The evidence

presented gave rise to a reasonable inference that appellant, who was required to have a licensed driver with her at all times, had knowledge of the danger she posed driving alone based on her failure to control the vehicle she was operating just four days before the tragic events at issue. Despite that knowledge, she again chose to drive unaccompanied by a licensed driver. Here, the trier of fact could have reasonably concluded that the evidence, in its totality, supported a finding that appellant, with heedless indifference to the consequences, disregarded a substantial and unjustifiable risk in operating a vehicle on the date of the events. Construing the evidence most strongly in favor of the state, we find there was sufficient evidence as to the element of recklessness and, therefore, the conviction for aggravated vehicular homicide was supported by legally sufficient evidence.

{¶ 40} As indicated, appellant also challenges her conviction as against the manifest weight of the evidence. We note that, in a bench trial, "the trial court assumes the fact-finding function of the jury." *Cleveland v. Welms,* 169 Ohio App.3d 600, 2006-Ohio-6441, ¶ 16 (8th Dist.). Further, under Ohio law, "the weight to be given evidence and credibility to be afforded testimony are issues for the trier of fact." *State v. Simmons,* 4th Dist. No. 13CA4, 2013-Ohio-2890, ¶ 11.

{¶ 41} Appellant's manifest weight argument is similar to her sufficiency challenge, i.e., she contends the record does not support a finding that her conduct was reckless. We find, however, the record contains evidence upon which a rational trier of fact could find recklessness, and we conclude the trial court did not lose its way or create a manifest miscarriage of justice in finding appellant guilty of aggravated vehicular homicide.

{¶ 42} Appellant's first and third assignments of error are not well-taken and are overruled.

{¶ 43} Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____