[Cite as *State v. O'Brien*, 2013-Ohio-13.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2011-L-011** |
| TODD J. O'BRIEN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 10 CR 000375.

Judgment: Affirmed in part; reversed in part and remanded.


*Charles E. Colson*, Lake County Prosecutor, *Alana A. Rezaee*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*R. Paul LaPlante*, Lake County Public Defender, *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final judgment of the Lake County Court of Common Pleas. In the underlying criminal action, appellant, Todd J. O'Brien, was convicted of felony murder, felonious assault, aggravated vehicular homicide, failure to stop after an accident, and violation of a protection order. All of these crimes stemmed from a series of events that culminated in the death of Kayelee Russell-Martin.

{¶2} Appellant and the victim knew each other for nearly nine years, having first

met when they both were teenagers. At various times in their relationship, they were romantically involved and lived together. Moreover, in 2006, they had a son, Alex. However, appellant and the victim were never able to sustain their relationship, and on those occasions when they would have disagreements, their attitude toward each other was hostile.

{¶3} For his part, appellant had a history of stalking the victim when they were not together. He also displayed a tendency to irritate her by either calling or texting her constantly. Moreover, on at least one occasion, the victim alleged that appellant engaged in physical abuse. On another occasion, appellant threatened to "kill" the victim. As a result of the foregoing events, a civil protection order was issued against appellant.

{¶4} In early 2009, appellant and the victim were living together with their son. At some point, appellant invited his boyhood friend, Sean Doytek, to reside with them in their home. Due to this living arrangement, the victim and Doytek soon became friends. Later, when the victim left appellant and moved in with her aunt in Painesville Township, they began to date. Although the quality of this new relationship fluctuated often over the ensuing months, Doytek eventually proposed to the victim. However, they tried to hide their relationship from appellant because they were unsure how he would react.

{¶5} In June 2010, a new dispute arose between appellant and the victim about the extent of his right to visitation with their son. Consistent with his previous behavior, appellant began calling and texting her constantly, notwithstanding the existence of the civil protection order.

{¶6} On June 15, 2010, Doytek visited the victim at her aunt's condominium. In

the early afternoon, they decided to go to a pet store in a shopping mall in Mentor, Ohio. As they were sitting at a traffic light, they saw appellant's vehicle in a corner gas station. Before their light turned green, appellant maneuvered his vehicle in such a way as to enter the roadway. He then made a left-hand turn in front of the victim's car. Despite driving against traffic, appellant drove his vehicle close to the victim's car, but did not collide with it. He then made an obscene gesture, and drove off.

{¶7} After completing their shopping, Doytek and the victim drove back to her aunt's condominium. Instead of going inside immediately, they sat with Alex on a boulder located near a horseshoe-shaped driveway at the entrance of the complex. While they were sitting there, Doytek and the victim saw appellant's vehicle coming up the driveway. Appellant accelerated his vehicle and crossed over a lane of traffic. As the vehicle approached the boulder, its front left tire swerved onto the sidewalk and the grass. Both Doytek and the victim jumped from the boulder with Alex. Appellant's vehicle swerved away and drove out the driveway.

{¶8} Once Alex was taken inside, Doytek and the victim began walking toward the back of the condominium complex. Doytek took the victim's canister of pepper spray from her purse, and was walking slightly ahead of her. The victim called the police on her cell phone, and was still talking to a dispatcher as Doytek approached the intersection of two roads at the edge of the complex. As Doytek was standing near the intersection, the victim was still standing in a parking lot, partially hidden behind a clump of trees.

{¶9} At that point, appellant's vehicle pulled up to the intersection and stopped. Doytek approached the vehicle from behind and attempted to shoot the pepper spray at

3

appellant through the open window on the driver's side. Though some of the spray went into the car, appellant pulled forward into the intersection and made a left turn onto the adjacent roadway. After pulling forward a short distance, he stopped his vehicle again.

{¶10} Doytek followed the vehicle and again tried to approach it from behind. As he reached the back of the vehicle, the victim emerged from the trees and walked into the roadway a few feet directly behind the vehicle. When Doytek got near the driver's door on the left-side of the vehicle, he again attempted to use the spray. In response, appellant put his vehicle into reverse and hit the accelerator. As a result, the vehicle immediately hit the victim.

{¶11} Initially, the victim rolled onto the trunk of the vehicle and hit the back window. She then rolled off the trunk and landed on the roadway. Since appellant's vehicle was still accelerating, the back tires ran over her. She was dragged under the vehicle for a number of yards before she emerged from the front of the vehicle. Appellant then backed into a driveway and stopped his vehicle. Without getting out of his vehicle, he drove forward around the body and left the scene.

{¶12} The victim immediately died from the injuries she suffered. In addition to Doytek, the incident was witnessed by a number of residents of the condominium complex and others in the vicinity. Appellant eventually gave himself up to authorities in a separate county, and gave a lengthy statement about the incident. As to the fact that he continued to go backward after initially striking the victim, appellant stated that he thought he hit a speed bump.

{¶13} In August 2010, the Lake County Grand Jury returned a 13-count

4

indictment. Regarding the specific incident in which the victim was hit by appellant's vehicle, the indictment contained charges of aggravated murder, murder, felony murder, aggravated vehicular homicide, felonious assault, violation of a civil protection order, and failure to stop at the scene of an accident. As to Doytek, the separate "horseshoe driveway" incident, and the separate "traffic light" incident, the indictment had four additional counts of felonious assault and two additional counts of violation of a civil protection order.

{¶14} An eight-day jury trial ensued. At the close of the evidence, the jury found appellant not guilty of aggravated murder and murder; as to the remaining five charges stemming directly from the victim's death, the jury returned guilty verdicts. In relation to the remaining six counts, the jury found appellant guilty of three additional counts of felonious assault and two additional counts of violation of a civil protection order. As to the charge of felonious assault which pertained to Doytek and was based upon the "fatal" incident, the jury found him not guilty.

{¶15} After conducting a separate sentencing hearing, the trial court issued its final judgment. For the purposes of sentencing, the court merged the aggravated vehicular homicide count and one of the felonious assault counts into the felony murder count. As to the latter charge, the court imposed an indefinite term of 15 years to life. In regard to the remaining seven counts, the trial court merged a misdemeanor count of violation of a protection order into a felony count of violation of a protection order, and then imposed a five-year term as to each of the remaining six counts. The trial court ordered all of the terms to be served consecutively, for an aggregate sentence of 45 years to life.

5

{¶16} In appealing the foregoing conviction and sentence, appellant raises eight assignments of error:

{¶17} "[1.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court admitted irrelevant and improper testimony of prior bad acts and character and improper hearsay testimony and then failed to give a limiting instruction to the jury.

{¶18} "[2.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court permitted the admission of direct testimony and hearsay testimony regarding what witnesses believed his state of mind was at the time in question.

{¶19} "[3.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court permitted the admission of gruesome death photos and irrelevant nude sexting photos.

{¶20} "[4.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court failed to give a complete accident instruction.

{¶21} "[5.] The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteen Amendments to the United States Constitution and Article 1, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel.

{¶22} "[6.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

{¶23} "[7.] The trial court erred to the prejudice of the defendant-appellant when

it returned a verdict of guilty against the manifest weight of the evidence.

{¶24} "[8.] The trial court erred to the prejudice of the defendant-appellant by sentencing him to a maximum and consecutive sentence of forty-five years to life in prison."

{¶25} Under his first assignment, appellant asserts he was denied a fair trial due to the admission of certain evidence showing that he committed prior bad acts. According to him, the jury's consideration of the disputed evidence constituted plain error because it raised the possibility that his conviction was based solely upon the conclusion that he was a person of bad character. He also states that the error in the admission of this evidence was compounded by the failure of the trial court to instruct the jury to limit its consideration of the evidence to cited purposes.

{¶26} The majority of the disputed evidence was set forth in the testimony of the victim's mother, other relatives or acquaintances of the victim, and Doytek. No objection was ever raised to the testimony in question. As a result, appellant can only prevail on his first assignment if the admission of the "prior bad acts" testimony can be characterized as plain error.

{¶27} "Pursuant to Crim.R. 52(B), 'plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' 'In order to constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of and the public's confidence in the judicial proceedings.' *State v. Tichon* (1995), 102 Ohio App.3d 758, 767, * * *. 'Notice of plain error (***) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *State v. Long* (1978), 53 Ohio St.2d 91, * * *,

7

paragraph three of the syllabus. 'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' *State v. Moreland*, (1990), 50 Ohio St.3d 58, 62, * * *." *State v. Griffith*, 11th Dist. No. 2008-P-0089, 2010-Ohio-821, ¶64.

{¶28} In summarizing the general standard for plain error, this court has stated that this type of error can only be found when: "(1) there was an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., there was an 'obvious' defect in the trial proceedings; and (3) the error affected substantial rights, i.e., affected the outcome of trial." *State v. Kovacic*, 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶14.

{¶29} Applying this standard to this case, the record does not support a finding of a plain error regarding the admission of the "prior bad acts" testimony.

{¶30} As previously mentioned, appellant and the victim knew each other for a considerable number of years before the events leading to her death. As part of the state's case-in-chief, considerable evidence was presented regarding the volatile nature of that relationship. Despite the fact that they had lived together at times and had a child, they had also been separated a number of times. During the periods when they were not together, appellant had a history of telephoning her on numerous occasions to merely argue about their relationship. He also had a history of stalking the victim. This behavior led to the issuance of a civil protection order against him.

{¶31} The majority of the evidence concerning their relationship pertained to the events that took place on either the day of the incident or a few days before. For example, the state presented a report setting forth the substantial number of phone calls and text messages appellant made to the victim during that limited time frame.

8

However, some testimony was allowed concerning the tumultuous nature of appellant's relationship with the victim through the years. This testimony included statements pertaining to alleged threats appellant made to the victim and his prior propensity for violent behavior. For example, the victim's mother testified that she was leery for a number of weeks that appellant was likely to kill her daughter.

{¶32} Moreover, evidence of appellant's general character and his relationship with his son was introduced. Examples of this type of testimony included the mother's characterization of appellant as a "loser," a "pot" smoker, and a poor father. As to the type of father appellant was, Sean Doytek was permitted to testify about a telephone conversation appellant had with his son two days before the incident, in which he tried to tell his son that he was not his actual father.

{¶33} During the course of the mother's testimony, a sidebar conference was held regarding the scope of her statements on appellant's general character. At that time, the trial court expressly asked the primary defense counsel why he was not objecting to her testimony. In response, defense counsel indicated that he specifically decided not to object so that he would have the opportunity to refute the mother's testimony and, as a result, harm her credibility as a witness.

{¶34} Evid.R. 404(B) expressly states that evidence of a person's prior bad acts is not admissible to prove the nature of his general character and whether he has now acted in conformity with it. However, the rule also provides that "character" evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶35} In contending that the "intent" exception in Evid.R 404(B) is applicable, the

9

state argues that appellant's entire defense to the charges stemming from the victim's death was that an "accident" occurred. The state further maintains that, in light of his defense, it was necessary for the prosecution to show that appellant acted purposefully in driving his vehicle in such a dangerous manner. In other words, evidence as to the prior relationship was relevant to show that appellant acted in a way that was consistent with his previous threat to "kill" the victim.

{¶36} The record supports the state's assertion that the vast majority of the evidence concerning appellant's prior bad acts related to his relationship with the victim and how he reacted violently whenever he thought she was dating another man. In applying Evid.R. 404(B), the Twelfth Appellate District held that when there is a dispute as to whether the harm to the victim was caused accidentally, evidence concerning prior threats and prior acts of violence is admissible to prove that the defendant acted intentionally. *State v. Wyatt*, 12th Dist. No. CA2010-07-171, 2011-Ohio-3427, ¶7-12. Pursuant to this authority, and defense counsel's stated strategy for not objecting, the admission of the testimony as to appellant's prior relationship with the victim does not amount to plain error.

{¶37} While it is true that some of the "prior bad acts" testimony, such as the mother's assertions about appellant's use of marijuana, was irrelevant to the nature of his relationship with the victim, the amount of that other "character" evidence was relatively small in contrast to the amount of evidence submitted during the entire trial. Thus, even though the lack of any objection to that particular testimony did constitute an obvious error, the record before this court does not support the conclusion that this error had any effect upon the outcome of the trial.

10

**{¶38}** As a separate point, appellant submits that trial counsel's failure to request a limiting instruction regarding the jury's consideration of the "prior bad acts" evidence needlessly increased the possibility of prejudice. As to the need for such an instruction, a trial court has no obligation to give a limiting instruction when one is not requested, and defense counsel's failure to make such a request does not always result in plain error because the lack of a request may be a tactical decision. *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *19-20, quoting *State v. Schaim*, 65 Ohio St.3d 51, 61-62, fn. 9 (1992).

**{¶39}** Since the admission of testimony as to appellant's prior bad acts did not result in a denial of his right to a fair trial, his first assignment of error is lacking in merit.

**{¶40}** Under his second assignment, appellant submits that he was denied a fair trial when the trial court allowed certain lay witnesses to state their opinions regarding an ultimate factual issue in the action. As part of its case-in-chief, the state presented the testimony of at least two witnesses who saw appellant's car hit the victim. Both witnesses testified that their observations led them to believe that appellant acted intentionally. Appellant argues this testimony was prejudicial because, under two of the murder charges, the question of whether he acted purposefully was an ultimate issue for the jury.

**{¶41}** Of the seven counts of the indictment pertaining to the incident where the victim was struck by appellant's vehicle, only two, aggravated murder and murder, required the state to prove appellant acted purposefully in taking the victim's life. As previously mentioned, regarding those two counts, the jury expressly found appellant not guilty. Therefore, given that the jury never found that appellant had acted

11

intentionally, any error as to the admission of the disputed testimony was not prejudicial to appellant.

{¶42} Notwithstanding the foregoing point, the merits of appellant's argument as to the admissibility of the disputed testimony will still be considered. The admission of "opinion" testimony through a lay witness is governed by Evid.R. 701:

{¶43} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶44} The Ohio Rules of Evidence expressly provide the scope of "opinion" testimony a lay witness can offer: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶45} Accordingly, the critical point is whether the opinion of the lay witness will truly be helpful to the jury; i.e., if the basic facts are clear and the jury is able to draw its own conclusions, the lay opinion is not admissible. *See State v. Kehoe*, 133 Ohio App.3d 591, 603 (12th Dist.1999); *City of Ashtabula v. Smith*, 11th Dist. No. 2000-A-0029, 2001 Ohio App. LEXIS 2262, (May 18, 2001) at *14-15, citing Klotter, Criminal Evidence (7 Ed.1999) 277, Section 11.3 (Concurring Opinion of Judge Donald R. Ford).

{¶46} In this case, the trial record readily demonstrates that the testimony of the two lay witnesses was based upon their own perception of the fatal event as it occurred before them. Furthermore, even though the testimony of the two witnesses was relatively clear as to the events, the specific factual issue of whether appellant acted

purposefully was not so obvious. In this regard, the evidence showed that the victim did not walk into the road until a few seconds before appellant backed up the car. In addition, there was evidence that appellant turned his head to look behind him at essentially the same time he hit the accelerator to back up. Under such circumstances, the opinion of each lay witness was admissible under Evid.R. 701 because the disputed testimony assisted the jury in understanding the facts as they related to the basic question of appellant's intent.

{¶47} In conjunction with the foregoing point, appellant asserts that he also was prejudiced when references were made to similar lay opinions during the testimony of the coroner and the chief investigating sheriff's deputy. The testimony of both of these officials confirms that, in stating the materials each considered in producing their respective reports on the incident, both cited to statements of witnesses at the scene who described appellant's acts as intentional.

{¶48} As to these references, it must first be noted that the lay opinions were not cited for the truth of the matter asserted. In relation to the chief investigating deputy, the reference was made only to explain what information he gave to the coroner at the scene and how it affected the subsequent course of the investigation. In turn, that information was used by the coroner in formulating his own statutorily-mandated opinion concerning the cause of the victim's death. Thus, since the references were only made to establish the basis of both officials' subsequent actions in the investigation, no prejudicial error occurred in allowing the jury to hear the references as part of the testimony of the two witnesses. Appellant's second assignment does not have merit.

{¶49} Under his next assignment, appellant contends the trial court erred in

13

allowing the state to introduce into evidence multiple photographs from the autopsy of the victim. He maintains that, because the photographs were particularly repetitive and gruesome, they only served the purpose of inflaming the jury against him.

{¶50} There is no dispute that appellant's trial counsel did not object to any of the autopsy photographs. As a result, the admission of the photographs can only constitute a basis for reversal if plain error occurred.

{¶51} In reviewing the merits of the trial court's determination to admit or exclude evidence, an appellate court applies an "abuse of discretion" standard. *State v. Handiwork*, 11th Dist. No. 2002-P-0134, 2004-Ohio-6181, ¶18. As to the introduction of photographs in a non-capital murder case, the mere fact that they are gruesome or horrendous is not an automatic reason for exclusion. *Id.* at ¶21. Instead, the basic balancing test under Evid.R. 403(A) must be employed; i.e., it must be decided if the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. *Kovacic*, 2012-Ohio-219, at ¶29.

{¶52} A review of the disputed autopsy photographs shows that the first photograph provides an overall view of the victim's clothed body. Appellant asserts that this particular photograph adequately depicted the various injuries she suffered in the incident, and that many of the ensuing photographs of her unclothed physique were simply repetitive and needlessly gruesome.

{¶53} A review of the other 15 photographs challenged by appellant shows that the series of pictures are in no way repetitive. As a result of being hit and then dragged under appellant's vehicle, the victim suffered serious bruises and abrasions on many aspects of her body. The disputed photographs depict each of the various injuries.

14

Moreover, while some of the photographs provide an up-close view of specific injuries, none of them are so horrendous as to distract from the basic purpose of demonstrating of the nature of the victim's injuries.

{¶54} While certainly graphic in nature, each of the disputed photographs has probative value to the extent they depict the seriousness of the victim's injuries and the cause of her death. Like most autopsy pictures, the photographs could be characterized as gruesome. Yet, when the photographs are considered as a whole, their gruesome nature is not so significant that their probative value is outweighed by the danger of unfair prejudice. Accordingly, admission of the photographs did not constitute plain error.

{¶55} As a separate issue under this assignment, appellant submits that the trial court abused its discretion in admitting nude photographs that he retained on his cell phone. As part of the testimony of a police detective, the state presented a written report concerning the manner in which appellant used his cell phone immediately prior to the incident. Although the report primarily consisted of lists of various text messages and phone calls, it also contained photographs that were sent with a text message and retained on the memory of the phone. The nude photographs were of the victim and an unidentified male, and were sexually explicit.

{¶56} During the course of his testimony regarding the "phone" report, the police detective did not make any reference to the nude pictures; accordingly, no undue emphasis was placed on them. Moreover, at the close of the state's case, appellant's trial counsel did not object to the pictures or any other aspect of the report. In fact, defense counsel attempted to refer to the pictures in questioning appellant during his

15

trial testimony.

{¶57} The majority of the nude photographs taken from appellant's phone were of the victim. As part of its evidentiary submission in response to appellant's claim that the victim's death was an accident, the state tried to demonstrate that appellant was obsessed with the victim to the point that he would become violent when he was given a reason to be jealous. To the extent that the presence of the photographs on appellant's phone tended to show that he was obsessed with the victim, the photographs were relevant.

{¶58} Without providing an extensive argument, appellant asserts before this court that the introduction of the nude photographs raised the "possibility" of unfair prejudice against him in the eyes of the jury. While it cannot be denied that the photographs could have some prejudicial effect, the record does not support the conclusion that the prejudice was so great that it substantially outweighed the probative value of the photographs. Thus, admission of the photographs does not result in an obvious defect undermining the basic integrity of appellant's trial. His third assignment of error is not well taken.

{¶59} Under his fourth assignment, appellant asserts the trial court erred in failing to instruct the jury on the defense of accident as to all five counts relating to the victim's death. As was noted above, five of the charges against appellant were based upon the specific incident where he ran over her with his vehicle: aggravated murder, murder, felony murder, aggravated vehicular homicide, and felonious assault. When appellant made his request for an "accident" instruction at the close of the trial, the trial court granted it in regard to the mens rea of aggravated murder and murder, but denied

16

it as to the remaining three charges, under which the mens rea was not purposefully.

{¶60} The discussion regarding the inclusion of an "accident" instruction was held after the close of appellant's evidence near the conclusion of the trial. Initially, the lead defense counsel requested that an "accident" instruction be given as to all five charges pertaining to the death of the victim. The request appears to have been predicated upon counsel's inaccurate assumption that the mens rea for all five offenses was purposefully. After indicating that only aggravated murder and murder required a purposefully finding, the trial court stated that the "accident" instruction would only be given for those two counts because the fact that an act was an accident could only be employed to defend against the mens rea of purposefully or intentionally. Thereafter, defense counsel expressly agreed with the trial court's statement, and did not raise any objection to the "accident" instruction after it was read to the jury.

{¶61} Crim.R. 30(A) mandates that if a party has an objection to the trial court's instructions to the jury, it must be expressly raised before the jury retires to begin its deliberations. If the necessary objection is not made timely, the party waives all but plain error. *State v. Chambers*, 4th Dist. No. 10CA902, 2011-Ohio-4352, ¶42. In our case, defense counsel did not assert any objection as to the extent of the trial court's "accident" instruction before the jury deliberations began.

{¶62} "Accident is not an affirmative defense. * * *. Rather, the defense of accident is tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. * * *. Accident is defined as an unfortunate event occurring casually or by chance. * * *. Accident is an argument that supports a conclusion that the State has failed to prove the intent element of the crime

17

beyond a reasonable doubt. * * *. When accident has been raised as a defense, with a supporting record, a court errs when it refuses to charge the jury on the issue." (Citations omitted.) *State v. Atterberry*, 119 Ohio App.3d 443, 447 (8th Dist.1997).

**{¶63}** As the foregoing quote indicates, some Ohio appellate courts have only referred to the mens rea of "purposefully" in describing how the "accident" doctrine can be used as a means of negating the mens rea element of a crime. However, this court applies the doctrine when the mens rea of the charged offense is less than purposefully, i.e., knowingly. *See State v. Brady*, 48 Ohio App.3d 41 (11th Dist.1988). Similarly, we have stated that, when justified and requested, an "accident" instruction should be given even when the mens rea of the charged offense is recklessness. *See State v. Howell*, 137 Ohio App.3d 804 (11th Dist.2000).

**{¶64}** In *Brady*, the defendant was charged with felonious assault, an offense requiring a mens rea of "knowingly." At trial, the court refused to give the defendant's requested "accident" instruction. On appeal, the *Brady* court first held that, since the evidence at trial was sufficient to support the 'accident' defense, the trial court should have given the instruction. *Brady*, 48 Ohio App.3d at 42. We then addressed the state's argument that the failure to instruct on accident was harmless because the jury had been instructed on the statutory definition of "knowingly." That is, it was the state's position that implicit in the definition of knowingly is that if an accident is found by the jury, this means that the mens rea has not been proven. In rejecting the argument, the *Brady* court held that, while it was arguable that a jury would see the interplay between "unknowingly" and accident, by requiring an explicit instruction we remove the possibility that a juror would miss this point. *Id.* at 43. Based upon this, the *Brady* court concluded

that, when warranted under the facts of a case, an "accident" instruction should be given.

**{¶65}** Pursuant to *Brady*, the failure to give an "accident" instruction can never be deemed a harmless error when requested because an instruction as to the definition of "knowingly" does not provide an explicit instruction regarding the legal effect of a finding of accident. *See, also, Howell*, 137 Ohio App.3d at 814.

**{¶66}** Like the defendant in *Brady*, appellant was charged with felonious assault. Moreover, the count of felony murder against him was predicated upon the underlying charge of felonious assault. Therefore, the governing mens rea for both of those counts was "knowingly." See R.C. 2903.11(A) and 2903.02(B). In addition, pursuant to R.C. 2903.08(A)(2)(b), the offense of aggravated vehicular homicide requires a finding of "reckless" behavior. As a result, the holdings in *Brady* and *Howell* are clearly applicable to the facts of this case.

**{¶67}** In the years since the release of *Brady* in 1988, at least one of our sister appellate districts has reached a decision directly conflicting with our *Brady* analysis. *See State v. Staats*, 9th Dist. No. 15706, 1994 Ohio App. LEXIS 1608, *13 (April 13, 1994), in which the Ninth Appellate District concluded that the failure to give an "accident" instruction was not reversible error because the jury would have realized that a finding of "knowingly" necessarily entailed the absence of an accident. On the other hand, our *Brady* holding was expressly followed in *State v. LaBarre*, 5th Dist. No. CA-8367, 1991 Ohio App. LEXIS 2632, *7-8 (June 3, 1991), in which the Fifth Appellate District held that a prejudicial error occurred when the trial court did not provide an "accident" instruction regarding the "knowingly" element of voluntary manslaughter.

{¶68} This court has never specifically overruled the holding in *Brady*; in fact, 12 years after the release of *Brady*, we essentially applied the identical analysis in regard to the mens rea of "reckless." *Howell*, *supra*. Furthermore, in requesting this court to not follow *Brady* in this case, the state has failed to set forth any legitimate reason for us to overrule our prior precedent. Therefore, the *Brady* decision is still binding authority in this district, and was clearly pertinent to the three counts of felony murder, felonious assault, and aggravated vehicular homicide in this case.

{¶69} Nevertheless, it must again be noted that appellant's trial counsel did not object to the trial court's decision to limit its "accident" instruction to the two charges of aggravated murder and murder; thus, this court must again engage in a "plain error" analysis. As previously discussed, a criminal conviction can only be reversed under the "plain error" standard when, inter alia, an obvious defect in the proceedings adversely affected the outcome of the trial. *Kovacic*, 2012-Ohio-219, at ¶14.

{¶70} In arguing that the record does not support a finding of plain error in this case, the state cites *State v. Smiley*, 8th Dist. No. 93853, 2010-Ohio-4349. In *Smiley*, the primary issue before the appellate court was whether the defendant had been denied effective assistance as a result of the trial counsel's failure to request an "accident" instruction in regard to the charged offense of felonious assault. However, in addressing this question, the *Smiley* court also considered whether the lack of any "accident" instruction to the jury could be plain error. In upholding the conviction for felonious assault, the *Smiley* court concluded that the requirements for plain error could not be met ""[b]ecause the accident defense is not an excuse or justification for the admitted act," and the effect of such an instruction "would simply (* * *) remind the jury

20

that the defendant presented evidence to negate the requisite mental element," such as purpose. In this regard, "[i]f the jury had credited [the defendant's] argument, it would have been required to find [the defendant] not guilty (* * *) pursuant to the court's general instructions.'" *State v. Johnson*, 10th Dist. No. 06AP-878, 2007 Ohio 2792, ¶63 * * *." *Id*. at ¶16. *See, also, Chambers*, 2011-Ohio-4352, ¶46.

{¶71} In essence, the *Smiley* court found that there had been no plain error because, by providing the jury with the statutory definition of "knowingly," the trial court told the jury that the defendant could not be found guilty of felonious assault if an accident had occurred. *Id*. at ¶18-19. At first glance, the *Smiley* plain error analysis would appear to directly conflict with our ultimate holding in *Brady*. However, it must be reiterated that the *Brady* opinion never addressed the issue of whether plain error had occurred. Instead, the sole issue before the *Brady* court was whether an error resulted from the trial court's denial of the defendant's express request for an "accident" instruction.

{¶72} As previously indicated, as part of our analysis in *Brady*, this court acknowledged that it is arguable that, even in the absence of an instruction on accident, the jury could still understand that if it found that the defendant's conduct was an accident, he did not act knowingly. *Brady*, 48 Ohio App.3d at 43. The basis for our decision in *Brady* was that, even though it is likely that the jury would see the foregoing relationship even in the absence of an "accident" instruction, there was still a possibility that a particular set of jurors might not comprehend the legal effect of a finding that if the defendant's conduct was an accident, he could not have acted knowingly. Given these circumstances, the better practice is to always require the "accident" instruction

21

whenever it is warranted under the facts, and to hold that it is prejudicial error to not give the instruction when requested by the defendant because the "accident' instruction explicitly states what is only implicit in the pertinent mens rea definitions.

{¶73} However, under a plain error analysis, the nature of our review of the record is substantially different. Again, plain error should not be found unless it can be said that the disputed error affected the outcome of the trial in such a way that it had a substantial adverse impact upon the integrity of the underlying proceeding. *Griffith*, 2010-Ohio-821, at ¶64. Pursuant to *Smiley* and *Chambers*, *supra*, two other appellate districts have held that the absence of an "accident" instruction does not constitute plain error because a proper definition of the term "knowingly" will suffice to inform an average juror that if an accident occurred, then the defendant did not act knowingly. Upon due consideration, this court holds that the *Smiley* plain error analysis is persuasive, and does not conflict with our prior holding in *Brady*. That is, we conclude that the lack of an "accident" instruction does not amount to plain error.

{¶74} In this case, the trial record shows that the trial court gave a proper definition of "knowingly" in relation to the counts of felony murder and felonious assault, and a proper definition of "recklessness" as to the count of aggravated vehicular homicide. Hence, since the record does not support a finding of plain error, appellant's fourth assignment lacks merit.

{¶75} Under his next assignment, appellant states that his entire conviction must be reversed because he was denied his basic constitutional right to effective assistance of trial counsel. In support of this assertion, he cites to trial counsel's failure to request a limiting instruction in regard to the "prior bad acts" testimony and the failure to object

22

to the gruesome autopsy photographs.

{¶76} "In order to prevail on a claim of ineffective assistance of counsel, appellant must establish that: (1) the performance of defense counsel was seriously flawed and deficient; and (2) the result of appellant's trial would have been different if defense counsel had provided proper representation. See *Strickland v. Washington* (1984), 466 U.S. 668, * * *. We are to be highly deferential in our review of trial counsel's performance. Id. at 689. Moreover, it is well-settled that counsel benefits from a strong presumption of competence. See *State v. Smith* (1985), 17 Ohio St.3d 98, * * *. In other words, defense counsel is not ineffective unless his or her performance fell below an objective standard of reasonable representation, and the defendant is prejudiced from that performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, * * *. Nevertheless, analysis of whether counsel's performance was deficient is not necessary if a claim can be disposed of by showing a lack of sufficient prejudice. Id." *Kovacic*, 2012-Ohio-219, ¶45.

{¶77} Concerning the two matters cited by appellant, consistent with our prior analysis, the trial record does not support a finding of deficient performance as to the "prior bad acts" testimony. Similarly, since the autopsy photographs are relevant and their probative value is not outweighed by the danger of unfair prejudice, they were admissible. In addition, given our conclusion under the fourth assignment that the absence of an "accident" instruction to the jury did not constitute plain error, counsel's failure to object to the trial court's instructions does not constitute ineffective assistance. Thus, as to the foregoing points, appellant fails to establish that he was denied a fair trial as a result of the actions of his trial counsel.

23

{¶78} As a separate argument pertaining to the competency of his trial counsel, appellant submits that he was prejudiced by counsel's decision to not request that the entire audiotape of his statement to the police be played for the jury. After his surrender to the authorities, appellant agreed to be interviewed and provided a statement about the incident. This interview lasted for over two hours and was taped by the authorities. At trial, the state introduced the audiotape of the statement into evidence, but no portion of the tape was actually played before the jury.

{¶79} According to appellant, the playing of the audiotape would have helped his case because the jury would have heard how distraught he was immediately following the incident. However, our review of the trial record shows that, in testifying before the jury, one of the officers who conducted the interview described appellant's demeanor and how he reacted when he was informed that the victim was dead. Specifically, the officer testified that appellant began screaming and cried hysterically. Moreover, appellant testified on his behalf at trial; thus, he had every opportunity to explain to the jury what his feelings had been at that time. For this reason, the trial record does not support any finding that appellant was prejudiced by the fact that the audiotape was not played for the jury. Accordingly, the fifth assignment is not well taken.

{¶80} Under his sixth assignment, appellant challenges the trial court's decision to deny his Crim.R. 29 motion for a judgment of acquittal, which was made at the close of the state's case-in-chief. As to the remaining three charges relating to the incident causing the victim's death, i.e., felony murder, felonious assault, and aggravated vehicular homicide, he argues that the state failed to present any evidence that he acted knowingly or recklessly when he backed up his car.

{¶81} It is well established under Ohio law that a Crim.R. 29 motion for judgment of acquittal contests the legal sufficiency of the state's evidence. *State v. Sawyer*, 11th Dist. No. 2011-P-0003, 2011-Ohio-6098, ¶55. Therefore, such a motion should not be granted "when the state's evidence is such that a reasonable juror could find that every essential element of the crime was established beyond a reasonable doubt." *State v. Ramirez*, 11th Dist. No. 2010-L-040, 2011-Ohio-6335, ¶23.

{¶82} "'* * * (A) reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt.' *State v. March* (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at *8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks* (1991), 61 Ohio St.3d 259, * * *, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis* (1997), 79 Ohio St.3d 421, 430 * * *." *Sawyer*, 2011-Ohio-6098, at ¶60.

{¶83} In essentially claiming that he could not have acted "knowingly" when he hit the victim while backing up, appellant emphasizes that the event took place quickly and that he was driving too fast and erratically to realize that the victim was now behind him. As to this point, this court would note that R.C. 2901.22(B) provides that a person acts knowingly "when he is aware that his conduct will probably cause a certain result * * *." By its very nature, the act of driving backwards at a fast speed and in an erratic, "zigzagging" manner is so dangerous that an accident is likely to occur. Hence,

regardless of whether appellant realized that the victim was behind him, the evidence was sufficient. Moreover, there was some evidence indicating that appellant looked behind him momentarily before accelerating; if believed, this evidence supports an inference that he saw the victim before his vehicle began to go backwards.

{¶84} As to the charge of aggravated vehicular homicide, requiring a mens rea of reckless, R.C. 2901.22(C) states that a person engages in reckless behavior "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result * * *." Consistent with our analysis as to the "knowingly" element, we conclude that the state presented sufficient evidence to support a finding of recklessness.

{¶85} As a separate argument under this assignment, appellant asserts that the state failed to present any evidence that he acted knowingly when he drove his vehicle unto the sidewalk near the "horseshoe" driveway of the victim's condominium complex. As to this issue, the evidence demonstrated that, in driving his vehicle toward his son, the victim, and Doytek as they were standing near a boulder, appellant crossed a lane of traffic and drove upon the sidewalk and some of the grass before veering away. The fact that appellant drove directly toward them indicated that he was fully aware of their presence. Additionally, the record shows that he performed this maneuver at a high rate of speed. Hence, again, the evidence was sufficient as to the "knowingly" element.

{¶86} Taken as a whole, the state's evidence was legally sufficient to warrant the submission of all pending charges to the jury. Thus, appellant's sixth assignment is not well taken.

{¶87} Under his next assignment, appellant contends that his three convictions

stemming from the victim's death were against the manifest weight of the evidence. As he did under the sixth assignment, appellant focuses his challenge on the "knowing" element of felonious assault and felony murder. That is, he again argues that the act he committed in backing his car into the victim occurred so quickly that the evidence could only be interpreted to show that he did not form the requisite mens rea. He also asserts that the testimony of Sean Doytek should have been rejected because it was completely lacking in credibility.

{¶88} "'In determining whether the verdict was against the manifest weight of the evidence, "*** the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) (Emphasis added.)'" *Schlee*, 1994 Ohio App. LEXIS 5862, at *14-15, quoting *State v. Davis*, 49 Ohio App.3d 109, 113 (1988).

{¶89} As appellant correctly asserts, Sean Doytek was the sole state witness at trial who testified that appellant turned his head and looked behind his car a split second before applying the accelerator and hitting the victim. It is appellant's basic position that Doytek's version of the event was so inconsistent with the other evidence presented at trial that it was not believable. According to appellant, the remaining evidence showed that the events happened so quickly that he did not have time to turn his head prior to hitting the accelerator.

{¶90} Regarding this argument, it must be emphasized that, of all the witnesses who actually saw the incident occur, Doytek was the closest, being only a few feet away

27

from appellant's vehicle when it began to back up. Furthermore, given that appellant's reason for moving his vehicle backward was to avoid Doytek, it logically follows that he was looking at Doytek before he decided to move. Thus, despite the fact that no one else saw appellant look backward, Doytek's version was still credible because he was in the best position to see appellant's head movements.

{¶91} When considered as a whole, Doytek's trial testimony did not contain any inconsistencies or illogical statements which would call into question his truthfulness. Additionally, his testimony, if believed, constituted some evidence upon which a juror could reasonably find that appellant acted knowingly when he hit the victim with his vehicle, thereby satisfying the elements for both felony murder and felonious assault. For the same reason, the "reckless" element of aggravated vehicular homicide was also met. Hence, since the jury verdict on the three charges relating to the victim's death was not against the manifest weight of the evidence, appellant's seventh assignment lacks merit.

{¶92} Under his final assignment of error, appellant has raised two issues as to the propriety of the sentence which the trial court imposed. First, he contends that the trial court failed to give proper consideration to the remorse which he exhibited during the trial. Based upon this, he further contends that consecutive and maximum prison terms should not have been imposed. Second, appellant maintains that the trial court committed plain error when it failed to merge the two felony "protective order" charges into the corresponding counts of felonious assault for purposes of sentencing.

{¶93} Pursuant *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, a two-prong test is followed in reviewing a criminal sentence on appeal. "First, the [appellate court]

28

must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincing contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.* at ¶26. This court has indicated that an abuse of discretion occurs when the trial court fails to engage in sound, reasonable, and legal decision-making. *State v. Alsina*, 11th Dist. No. 2011-A-0016, 2011-Ohio-6692, ¶13.

{¶94} In this case, appellant has not contested the legality of the imposed term; instead, he submits that the maximum sentence possible was not justified in light of the remorse he has shown. However, a review of the general facts of this matter indicates that, of the offenses for which he was convicted, appellant committed the worst possible form of those crimes. That is, in backing his car up in such a haphazard manner, he gave no heed to the threat he could pose to the victim. Moreover, after initially hitting the victim, he did not attempt to stop his car in order to limit the harm to the victim. Given these circumstances, his remorse was not entitled to significant weight.

{¶95} Appellant further submits that the trial court did not accord proper weight to certain mitigating factors, such as he was reacting to strong provocation when his vehicle hit the victim. As to this point, even though the record confirms that Doytek was trying to hit appellant with pepper spray right before the fatal incident occurred, the trial court could have readily found that appellant had been the instigator of the entire confrontation by following the victim and Doytek from Mentor to the condominium complex; hence, appellant's "provocation" argument was not entitled to significant weight. Similarly, the trial court could have justifiably rejected appellant's contention

that his reaction to the various events on the fatal day stemmed from the fact that he was distraught by the possibility that he might be losing visitation with his son. The state presented considerable evidence from which it could be inferred that appellant's commission of the various crimes had been motivated solely by his obsession with the victim and his refusal to accept the basic fact that she no longer wanted to have a relationship with him.

{¶96} Finally, appellant argues that the imposition of consecutive and maximum sentences cannot be upheld because, during the sentencing hearing, the trial court was biased against him. In support of this point, he notes that the court made derogatory comments concerning the propriety of certain evidence which the defense introduced at trial. For example, the trial court was critical that the defense presented the testimony of an expert witness who theorized that appellant's vehicle was not going over 5 m.p.h. when it hit the victim.

{¶97} Generally, the submission of evidence is not a proper factor for consideration in the imposition of sentence. Nevertheless, upon reviewing the entire transcript of the sentencing hearing and the sentencing judgment, the references to the cited evidence were not a controlling factor in the trial court's sentencing determination. That is, the record shows that the decision to impose maximum and consecutive prison terms was based primarily upon these points: (1) appellant did not show any compassion for the victim at the time of the incident; (2) appellant had placed his own son's life in jeopardy during the "horseshoe drive" incident; (3) appellant's acts caused a tremendous amount of grief for his son and the victim's family; (4) appellant's acts were based upon impulsive behavior over which he did not try to exercise any control; and (5)

he used his motor vehicle as a deadly weapon throughout the entire episode.

{¶98} When viewed as a whole, the trial court's sentencing determination was predicated upon relevant factors under R.C. 2929.12 and 2929.13. Moreover, the trial court's findings on those factors were supported by the evidence presented at trial. Therefore, the trial court did not abuse its discretion in imposing maximum and consecutive sentences for the various offenses.

{¶99} Under the second aspect of this assignment, appellant asserts that it was plain error for the trial court to impose separate five-year terms as to each of the two felony charges for violating a protection order. Besides the misdemeanor "protection order" charge that was based on the separate "traffic light" incident in Mentor, appellant was found guilty of two felony "protection order" charges that were based upon the "horseshoe drive" incident and the fatal incident, respectively. Appellant argues that, for sentencing purposes, the two felony charges should have been merged with the two counts of felonious assault pertaining to the victim and the two incidents in question.

{¶100} Specifically, he maintains that the crime of violating a civil protection order and the crime of felonious assault are allied offenses of similar import, pursuant to R.C. 2941.25(A). In response, the state contends that, even if the two offenses are allied for purposes of the statute, separate prison terms on each of the felony "protection order" charges was still warranted because appellant had a separate animus as to each crime.

{¶101} As an initial point, no objection was made to the trial court's decision to impose a separate term on each of the two felony "protection order" convictions. However, the Supreme Court of Ohio has stated that the imposition of multiple sentences for allied offenses is always viewed as plain error. *State v. Underwood*, 124

Ohio St.3d 365, 2010-Ohio-1, ¶31.

{¶102} R.C. 2941.25 sets forth the procedure to be followed in relation to a criminal conviction involving multiple counts:

{¶103} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶104} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all offenses, and the defendant may be convicted of all of them."

{¶105} As to the test to be employed in deciding when two crimes are allied offenses of similar import, a plurality of the Ohio Supreme Court summarized its application of R.C. 2941.25 in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, which was decided seven days after the trial court sentenced in this case. In subsequent cases before this court, we have expressly followed the *Johnson* plurality. *See State v. Muncy*, 11th Dist. No. 2011-A-0066, 2012-Ohio-2830. The *Johnson* court stated, at ¶48-51:

{¶106} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct * * *. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

32

{¶107} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * *.

{¶108} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶109} "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Citations omitted and emphasis sic.)

{¶110} In our case, the issue is whether felonious assault and a violation of a protection order are allied offenses of similar import. Under R.C. 2903.11(A)(2), a person is guilty of felonious assault if he knowingly causes, or attempts to cause, physical harm to another by means of a deadly weapon or dangerous ordinance. Pursuant to R.C. 2919.27(A)(2), a person is guilty of violating a protection order if he recklessly fails to comply with a protection order issued under R.C. 2903.213 or 2903.214.

{¶111} Upon comparing the elements of these two crimes, this court holds that they are allied offenses of similar import because the conduct which results in the commission of a felonious assault would also result in the commission of a violation of protection order, if such an order is in effect. *Cf.*, *State v. Weathers*, 12th Dist. No. CA2011-01-013, 2011-Ohio-6793. In this regard, conduct done "knowingly" encompasses conduct performed recklessly. *State v. Skeens*, 7th Dist. No. 286, 2001-Ohio-3476, ¶24.

33

{¶112} Furthermore, during both the "horseshoe drive" incident and the fatal incident, the two offenses were committed with the same animus. Because it was plain error for the trial court not to merge for sentencing purposes the two felony "protection order" counts into the two felonious assault counts involving the victim and the two incidents at the apartment complex, appellant's eighth assignment has merit to that limited extent.

{¶113} Pursuant to the analysis under the eighth assignment, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part, and the case is remanded for the limited purpose of resentencing appellant in light of the merger of the two counts of felony violation of a protection order.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.